DUEÑO, PLAINTIFF AND APPELLEE, *v.* DUEÑO, DEFENDANT AND APPELLANT.

APPEAL from the District Court of San Juan in an Action for Divorce.

No. 2141.—Decided December 21, 1920.

DIVORCE—CRUEL TREATMENT—CONDONED CRUELTY.—A complaint from which it appears that the only acts of cruelty not condoned by the plaintiff were that while he was more or less indisposed his wife failed to lavish attentions upon him and to give him his medicine does not allege facts sufficient to constitute a cause of action for divorce on the grounds of cruel treatment and grave injury.

ID.—ID.—It is almost unanimously held that to constitute a revival of condoned cruelty it is not necessary that the words or conduct occurring afterward, independently of the previous ill-treatment, should constitute a cause for divorce, or entitle the petitioner to a decree of separation. The subsequent misconduct may be of slighter nature than that which would constitute original cruelty, since the apprehension of danger will be more justly excited. But, on the other hand, the same considerations which support the doctrine that condonation is less readily presumed against the wife than against the husband, have caused it to be held that a revival of condoned cruelty is less readily presumed against her than against him.

The facts are stated in the opinion.

*Messrs. J. H. Brown* and *M. Acosta* for the appellant.

*Mr. O. M. Wood* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Defendant, in a motion to set aside a judgment by default entered in a divorce proceeding, alleged, first, that the court had not acquired jurisdiction over the person of such defendant and, second, that the complaint did not state facts sufficient to constitute a cause of action.

The motion was overruled and the same propositions are submitted on appeal. In view of the conclusion reached on the second we need not discuss the first.

The amended complaint in question alleged:

"First. That both the plaintiff and the defendant are of age and residents of Bayamón, that they have lived for more than one year in the Island of Porto Rico and subject to the jurisdiction of this court prior to the filing of this complaint.

"Second. That the plaintiff and defendant were married in the city of Baltimore, Maryland, on October 25, 1903.

"Third. That husband and wife lived in harmony up to a few years ago when defendant began to act in a supercilious and disagreeable manner, insulting the plaintiff almost daily, calling him, among other things, scum, lewd, scoundrel, filthy, felon, gambler an drunkard in a loud voice in the presence of the public.

"Fourth. That although plaintiff provides ample funds for the upkeep of his home and the living expenses of his family defendant is so little responsive that she commonly fails to prepare their children's and the plaintiff's meals on time, her object being to distress and annoy the plaintiff; that she is careless in the preparation of the family's food, which is consequently neither wholesome, sufficient nor nutritious, but, on the contrary, of such poor quality and so badly prepared as to cause the frequent illness of the children and the other members of the family.

"Fifth. That the spirit and state of animosity on the part of the defendant is such that when this plaintiff has courteously endeavored to suggest or indicate a means of improvement, defendant has become infuriated and insulted the plaintiff, calling him names similar to those above mentioned, compelling the plaintiff to leave the house overwhelmed by the shower of epithets she heaps upon him.

"Sixth. That notwithstanding the several methods employed to effect a modification of defendant's conduct, she continues as heretofore, thereby depriving the plaintiff of the peace and harmony of his home.

"Seventh. That the relations between the parties reached such a stage that in or about the month of August, 1911, the defendant made an attempt on the life of the plaintiff by means of a revolver which fortunately missed fire.

"Eighth. That the patience of the plaintiff being finally exhausted and becoming convinced of the impossibility of supporting this kind of life, towards the end of July or on July 27, 1911, he brought an action for divorce in the District Court of Mayagüez, which action, at the request of the defendant and subject to her solemn promise to amend and not to repeat the altercations which destroyed the peace and harmony of the conjugal abode, he withdrew, but that despite her promises defendant has continued as before and it may even

be said that her present conduct is still more offensive and humiliating.

"Ninth. That in support of the foregoing plaintiff cites the following instance: That having become somewhat seriously ill and not receiving proper care and attention at the hands of the defendant, who even refused to administer his medicine to him, plaintiff was obliged to take refuge in the home of his parents; that even there she pursued him with her inhumanities, since in the early morning of May 14, last, she went to the house for him, creating a great uproar and addressing the plaintiff and his parents an infinite number of injurious terms, proceeding to such an extent that one of the neighbors went for a policeman, and thereby succeeded in intimidating the defendant.

"Tenth. That the following children are the fruits of this marriage; namely: Esmeralda, Braulio, Julia, Tom, Mary and Carmen, aged 14, 12, 11, 10, 4 and 1 years respectively, and that there is no community property for division.

"Eleventh. That the present state of inquietude at his home is insupportable; that the insults, lack of proper nourishment, annoyances and vexations this plaintiff is called upon to endure daily without cause or reason therefor, have ruined his health and made his life a real martyrdom.

"Twelfth. That this plaintiff has always conducted himself like a good husband and exemplary father and has always complied with his duties as such and is convinced that he cannot and ought not to support longer the vexations and abuse of which he has been made the object up to this time."

Obviously, the only conduct that clearly appears not to have been condoned, as set forth in the eighth averment, is that complained of in the ninth. The vague statement that plaintiff was somewhat seriously ill does not necessarily imply that he required any special care or attention from the defendant, nor that he was unable to take his medicine without assistance, nor even that he was confined to his bed. On the contrary, plaintiff seems to have been quite able, not only to minister to his own wants, but to make the journey to the house of his parents, although neither the distance traveled nor the means of transportation employed nor the

manner in which he made use of same is disclosed. The period that elapsed between the date of the exodus and that of the matutinal call is not specified. What provision, if any, was made for the sustenance and comfort of the wife and children during this interval, is left largely to our imagination. And aside from the presumption, if any, that the situation so created continued to exist, there is no indication of a suspension of marital relations.

On the other hand, the complaint as a whole does warrant the conclusion that for some eight years and up to the time of the incident described in the ninth averment the defendant had given her husband no ground for complaint. And the tenth averment shows that during this period two children were born in addition to the four others enumerated therein. The failure to lavish attention upon a more or less indisposed husband or even to give him his medicine (*administrarle los medicamentos*) can hardly be regarded as cruel treatment nor, without more, as justification for the desertion of wife, home and children by such husband.

"Condoned cruelty may be revived by fresh acts of cruelty, provided the recrudescence is not provoked by the offensive conduct of the petitioner." Note to *Houghton* v. *Houghton*, 6 B. R. C. 585, 664.

Also:

"It is almost, though not quite, unanimously held that to constitute a revival of condoned cruelty it is not necessary that the words or conduct occurring afterward should, independently of the previous illtreatment, constitute a cause for divorce, or entitle the petitioner to a decree of separation. The subsequent misconduct may be of slighter nature than that which would constitute original cruelty, since the apprehension of danger will be more justly excited." *Idem*, page 665.

But, on the other hand—

"The same considerations which support the doctrine that condonation is less readily presumed against the wife than against the

husband have caused it to be held that a revival of condoned cruelty is less readily presumed against her than against him.'' *Idem*, 670.

The ruling appealed from must be

*Reversed.*

Chief Justice Hernández and Justices del Toro and Aldrey concurred.

Mr. Justice Wolf concurred in the judgment.